## BY FAX

ORIGINAL

FILED

2011 MAY -2 P 3:50

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
N.D. CALIF. SAN JOSE

Paid
S4
③

1 | William M. Audet (CA State Bar #117456)
waudet@audetlaw.com
2 | Joshua C. Ezrin (CA State Bar #220157)
jezrin@audetlaw.com
3 | Jonas P. Mann (CA State Bar #263314)
jmann@audetlaw.com
4 | Audet & Partners, LLP
5 | 221 Main Street, Suite 1460
San Francisco, CA 94105
6 | Telephone: (415) 568-2555

7 | Lockridge Grindal Nauen P.L.L.P.
Robert Shelquist (not admitted)
8 | rkshelquist@locklaw.com
9 | 100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
10 | Telephone: (612) 339-6900

11 | Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
12 | malleylaw@gmail.com
13 | 1045 North Zang Blvd
Dallas, TX 75208
14 | Telephone: (214) 943-6100

15 | *Counsel for Plaintiffs*

16 | **IN THE UNITED STATES DISTRICT COURT**

17 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

MEJ

18 | **SAN JOSE DIVISION**

19 |

20 | BEVERLY LEVINE, PHILLIP HALL, ERIN HILLMAN, THEODORE SPRADLEY; individuals, on behalf of themselves and others similarly situated,

CV 11-02157

CASE No.

21 | **JURY DEMAND**

22 |

**CLASS ACTION COMPLAINT**

23 | Plaintiffs,

24 | v.

25 | GOOGLE, INC., a Delaware Corporation;

26 | Defendant.

27 |

28 |

1   Plaintiffs, Beverly Levine, Phillip Hall, Erin Hillman, and Theodore Spradley, on behalf

2   of themselves and all others similarly situated, by and through their attorneys, Audet & Partners,

3   LLP; Lockridge Grindal Nauen, P.L.L.P.; and the Law Office of Joseph H. Malley, P.C., as and

4   for their complaint, and demanding trial by jury, allege as follows upon information and belief,

5   based upon, *inter alia*, investigation conducted by and through their attorneys, and upon their

6   personal knowledge as to all other allegations.

7   **NATURE OF THE ACTION**

8   1.   Plaintiffs bring this consumer Class Action lawsuit pursuant to Federal Rules of

9   Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) on behalf of themselves and a class of similarly

10   situated Internet users (each a "Class Member" of the putative "Class") who were victims of

11   privacy violations and unfair business practices wherein their privacy, financial interests, and

12   security rights, were violated by Defendant Google, Inc., (hereinafter referred to as "Google" or

13   "Defendant").

14   2.   The Defendant gained unauthorized access to, and unauthorized use of, Plaintiffs'

15   and Class Members' mobile devices used for communication over a cellular network which

16   included the Android Operating System (hereinafter referred to collectively as "mobile devices")

17   The Android Operating System (hereinafter "AOS") is an operating system for smartphones,

18   netbooks and tablets, allowed Defendant to access, collect, monitor, and remotely store

19   electronic data derived, in whole or in part, from the Mobile Devices tracked to the Plaintiffs'

20   and Class Members' Unique Device Identifiers (hereinafter referred to as "UDIDs"), a feature

21   which could not be turned off even if Plaintiffs and Class Members had utilized the so-called

22   "privacy feature" of the system.

23   3.   The nature of this action includes a sequence of events and consequences wherein

24   Application Developers and Application Developers' Affiliates gained individually and in

25   concert with Defendant Google, unauthorized access to, transmittal of, and use of data, which

26   included but was not limited to, the Plaintiffs' and Class Members' UDIDs, obtained from the

27   Plaintiffs' and Class Members' mobile devices.

28   4.   Google acted independently, and in concert with Application Developers and

1 │ Application Developer's Affiliates, knowingly authorizing, directing, ratifying, acquiescing in,

2 │ or participating in the conduct alleged herein.

3 │     5.     The Defendant's business plan involved unauthorized access to, and disclosure of,

4 │ Personal Information ("PI"), Personal Identifying Information ("PII"), Sensitive Identifying

5 │ Information ("SII"), hereinafter referred collectively to as User's Personal Information ("UPI"),

6 │ obtained from the Plaintiffs' and Class Members' mobile devices using their UDIDs provided by

7 │ Defendant Google, to aggregate all Plaintiffs' and Class Members' data including, but not

8 │ limited to, users' mobile device activities which Defendant accomplished covertly, without

9 │ actual notice or consent of Plaintiffs or Class Members.

10 │ **JURISDICTION AND VENUE**

11 │     6.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) against

12 │ Defendant. A substantial portion of the events and conduct giving rise to the violations of law

13 │ complained of herein occurred in this District and Defendant conduct business with consumers in

14 │ this District. Defendant Google, Inc.'s principal executive offices and headquarters during the

15 │ class period were located in this District.

16 │     7.     This court has Federal question jurisdiction as the complaint alleges violation of

17 │ the following: (1) Computer Fraud and Abuse Act, 18 U.S.C. §1030; and (2) Electronic

18 │ Communications Privacy Act 18 U.S.C. §2510. Subject-matter jurisdiction also exists in this

19 │ Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(c).

20 │     8.     This is the judicial district wherein the basis of the conduct complained of herein

21 │ involving the Defendant was devised, developed, implemented. The actual collection of

22 │ information and data was activated from, and transmitted to and from this District.

23 │ **PARTIES**

24 │     9.     Plaintiff Beverly Levine ("Levine") is a citizen and resident of Dallas, Texas,

25 │ (Dallas County, Texas).

26 │     10.     Plaintiff Phillip Hall ("Hall") is a citizen and resident of Addison, Texas, (Dallas

27 │ County, Texas).

28 │

1    11.    Plaintiff Erin Hillman ("Hillman") is a citizen and resident of Dallas, Texas,

2  (Dallas County, Texas).

3    12.    Plaintiff Theodore Spradley ("Spradley") is a citizen and resident of Farmers

4  Branch, Texas, (Dallas County, Texas).

5    13.    Defendant Google, Inc., ("Google") is a Delaware corporation headquartered in

6  California, during the class period, a privately owned corporation, which maintained its

7  headquarters at 1600 Amphitheatre Parkway, Mountain View, California, (Santa Clara County,

8  California). Defendant Google does business throughout the United States.

9    **A.    Plaintiff Beverly Levine's Experience**

10    14.    At all relevant times herein, Plaintiff Levine owned a mobile device, operated by

11  the AOS, used that mobile device, and on one or more occasions during the class period accessed

12  the Defendant Google's Android Market to download applications, which resulted in Defendant

13  gaining unauthorized access to, and unauthorized use of Ms. Levine's mobile device.

14    **B.    Plaintiff Phillip Hall's Experience**

15    15.    At all relevant times herein, Plaintiff Hall owned a mobile device, operated by an

16  AOS, used that mobile device, and on one or more occasions during the class period accessed the

17  Defendant Google's Android Market to download applications, which resulted in Defendant

18  gaining unauthorized access to, and unauthorized use of Mr. Hall's mobile device.

19    **C.    Plaintiff Erin Hillman's Experience**

20    16.    At all relevant times herein, Plaintiff Hillman owned a mobile device, operated by

21  an AOS,  used that mobile device, and on one or more occasions during the class period accessed

22  the Defendant Google's Android Market to download applications, which resulted in Defendant

23  gaining unauthorized access to, and unauthorized use of Ms. Hillman's mobile device.

24    **D.    Plaintiff Theodore Spradley's Experience**

25    17.    At all relevant times herein, Plaintiff Spradley owned a mobile device, operated

26  by an AOS, used that mobile device, and on one or more occasions during the class period, in the

27  city of residence, accessed the Defendant Google's Android Market to download applications,

28

1   which resulted in Defendant gaining unauthorized access to, and unauthorized use of Mr.

2   Spradley's mobile device.

3       E.   **Sequence of Events and Consequences- Plaintiffs and Class Members**

4       18.   The sequence of events, and consequences common to Plaintiffs and Class

5   Members, made the basis of this action, include, but are not limited to the following:

      a)  Plaintiffs and Class Members are individuals in the United States who own and use mobile devices, operated by the AOS, and accessed the Google Android Market;

      b)  Google Application Developers are Application Developers that entered into a legally binding contract referenced as "Android Market Developer Distribution Agreement," with Defendant Google as a "Developer," a licensing agreement with Defendant Google to host a platform for Android user's access to Android applications;

      c)  Google Application Developer's Affiliates are Ad Networks and/or Web Analytic Vendors that are affiliated with authorized Google Application Developers, and entered into a licensing agreement with one (1) or more of the Google Application Developers;

      d)  Plaintiffs and Class Members accessed the Defendant Google's Android Market, entered into a licensing agreement with one (1) or more of the Google Application Developers, installed one (1) or more Android applications associated with one (1) or more of the Google Application Developers, within the class period;

      e)  Defendant Google then transmitted, and/or allowed access to, without notice or authorization, the Plaintiffs' and Class Members' UDIDs, to one (1) or more of the Google Application Developers which in turn transmitted or allowed access of the UDID's to its Google Application Developer Affiliates;

      f)  Google Application Developers and its associated Google Application Developer Affiliates then took unprecedented liberties, without notice, or authorizations, with obtaining at will, any and all mobile device data of the Plaintiffs' and Class Members' mobile devices, using the mobile device's UDIDs to aggregate the mobile device data;

      g)  Google Application Developer's Affiliates then created, individually and in concert with Google Application Developers, a database related to Plaintiffs' and Class Members' mobile device data, which also revealed web browsing activities, to assist the Defendant tracking scheme. Such tracking could not be detected, managed or deleted, and provided, in whole or part, the collective mechanism to track Plaintiffs and Class Members, without notice or consent;

      h)  Defendant Application Developer's Affiliates and Google Application

1    Developers then conducted systematic and continuous surveillance of the
     Plaintiffs' and Class Members' mobile devices activity, which continues to
2    date;

3    i)  Defendant Application Developer's Affiliates and Google Application
         Developers Affiliates then copied, used, and stored the mobile device UDID
4        data derived from the Plaintiffs' and Class Members' mobile devices, after it
         knowingly accessed, without authorization, the Plaintiffs' and Class
5        Members' mobile device;

6    j)  Google Application Developers obtained Plaintiffs' and Class Members' UPI,
7        derived, in whole or part, from its monitoring the mobile application activities
         of Plaintiffs and Class Members. The personal information Defendant
8        compiled, and misappropriated, includes details about Plaintiffs' and Class
         Members' profiles to identify individual users to track them on an ongoing
9        basis, across numerous applications, and tracking users when they accessed
         applications from different mobile devices, at home and at work. This
10       sensitive information may include such things as users' video application
11       viewing choices to obtain personal characteristics such as gender, age, race,
         number of children, education level, geographic location, and household
12       income, what the Plaintiffs and Class Members viewed and what he/she
         bought, the materials he/she read, details about his/her financial situation,
13       his/her sexual preference, and even more specific information like health
14       conditions;

15   k)  Google Application Developers used Defendant Application Developer's
         analytics software to collect, use and disclose device data to a third parties, an
16       act that violates Plaintiffs' and Class Members' mobile device's agreement;

17   l)  Defendant Google then provided assurances to Plaintiffs and Class Members
         that any and all Android authorized applications was safe for downloading;
18

19   m)  Defendant Google failed to notify and warn Plaintiffs and Class Members of
         its covert activities within their mobile devices, and the covert tracking
20       activities of Google Application Developers and Application Developer's
         Affiliates before, during, and after notice, of the unauthorized practices, made
21       the basis of this action, so that Plaintiffs and Class Members could take
         appropriate actions to opt-out of the unauthorized surveillance by Defendant,
22       and/or to delete any and all Defendant applications;

23   n)  Defendant Google failed to block access to, and void the licensing agreements
24       of Google Application Developers after it received notice of individual and
         concerted actions, made the basis of this action;
25

26   o)  Defendant Google failed to provide any terms of service, or privacy policy,
         related to its use of UDIDs for tracking, or provide an updated privacy policy
         alerting its users of Google Application Developers and Defendant
27       Application activity, made the basis of these actions, thus Plaintiffs and Class
28       Members had no notice of such activities, nor the ability to mitigate their harm

and damage after the fact;

p) Defendant Google Developers failed to provide any terms of service, or privacy policy, related to its use of UDIDs for tracking, or provide an updated privacy policy alerting its users of Google Application Developers and Defendant Application activity, made the basis of these actions, thus Plaintiffs and Class Members had no notice of such activities, nor the ability to mitigate their harm and damage after the fact;

q) Defendant Google Application Developer's Affiliates then failed to provide notice to Plaintiffs and Class Members of its tracking activities in order to obtain authorization, thus Plaintiffs and Class Members had no notice of such activities, nor the ability to mitigate their harm and damage after the fact;

r) Defendant Google then did not provide Plaintiffs and Class Members information within its privacy policies concerning the affiliation of each Android Application Developer, its Application Developer's Affiliates, and information related to the extent of its tracking, made the basis of this action, nor adequate opt-out information;

s) Defendant converted the Plaintiffs' and Class Members' electronic data, including but not limited to UDIDs.

19. Plaintiffs and Class Members own the right to possess the personal property, including but not limited to, Plaintiffs' and Class Members' personal data.

20. The Plaintiffs' and Class Members' electronic data, misappropriated by Defendant, and populated with their actual user data constitute assets with discernable values.

21. Google Application Developer's Terms of Service and Privacy Policy do not reference notice that Android users' mobile devices' UDIDs shall be obtained for tracking purposes, provided to Application Developer Affiliates, and used to build a profile data collected of any and all users' mobile device activities. Many application developers do not even provide any Terms of Service and/or Privacy Policies.

## PRIVACY DOCUMENTS

22. Defendant Google does business online, using domains which include, but are not limited to: http://www.Google.com/ and its business includes internet search, cloud computing and advertising technologies, including the "Android Market."

1    23.   Defendant Google's document entitled, "Android Market Business and Program

2  Policies," http://www.google.com/mobile/androidmarket-policies.html, fails to provide any

3  reference to a "privacy policy."

4    24.   Defendant Google's document, entitled, "Android Market Terms of Service," fails

5  to reference its association with specific Defendant Application Developer's Affiliates, thus

6  alleviating the possibility of its user opting-out of the Defendant Application Developer's

7  Affiliate's tracking.

8    25.   Defendant Google's Term of Service and Privacy Policy fails to provide notice,

9  nor obtain consent from its users that their Mobile Devices' UDIDs shall be obtained and used

10  for behavioral tracking.

11                            **FACTUAL ALLEGATIONS**

12        **A.   Background**

13    26.   In 2008 Google released the Android Operating System which included unique

14  software visible serial numbers, and permitting Advertising Networks and Web Analytic

15  Vendors access to the user's mobile devices' Unique Device Identifiers ("UDIDs"), including

16  but not limited to, device identifiers ("SSIDs"), MAC address of the wireless access point,

17  ("BSSID"). International Mobile Equipment Identifiers ("IMEI"), International Mobile

18  Subscriber Identifiers ("IMSIs").  On October 22, 2008 Google's Android Market was launched

19  as a service for the OS devices, and permitted users to download applications from the Google's

20  Android Market. Recent studies though revealed that Google had transmitted, or allowed access

21  to, user's UDIDs, without authorization, allowing Application Developers, and Application

22  Developers Affiliates to obtain users' UDIDs for tracking users' mobile device activity.

23        **B.   Mobile Tracking**

24    27.   Mobile Internet advertising currently consists of streaming graphic files, in real

25  time, into content rendered by a user's mobile device browser. Mobile advertising systems lack

26  reliable browser tracking while traditional online advertising relies on the use browser cookies,

27  implementations inherent in conventional implementations of mobile ad serving have effectively

28  prevented mobile advertising from being effective.

1    28.    In order to obtain "uniqueness" in mobile devices, the key was to obtain Unique

2    Device Identifiers or "UDIDs,"  a special type of identifier used in software applications to

3    provide a unique reference number in mobile devices. Unlike traditional cookies, a user has no

4    choice to disable the UDID. A user can't opt-out or delete it, since it is always sent as part of the

5    Person's Smart Phone activities.  A user cannot use a block UDIDs being transmitted (as they

6    would in a browser), since it is hard coded into a user's phones software.

7    29.    Tracking by use of UDIDs is not exactly comparable any other type of tracking by

8    advertising networks. It's not anonymous data – it's an exact ID that's unique to each physical

9    device, and if merged with GPS data, it provides unlimited advertising opportunities (i.e.,

10   commercial value). When tracking your location data on the mobile device, it is calculated to 8

11   decimal points that can be far more exact and accurate than any sort of geographically-based IP

12   address look-up on the web. Instead of getting a general location, location data on a GPS-enabled

13   mobile can identify your precise latitude and longitude.

14   30.    The advertising and marketing industries have been strongly advancing technical

15   means of synchronizing tracking code so that information about individual consumer behavior in

16   cyberspace can be shared between companies and the UDID used in the majority of mobile

17   devices would be put to this purpose. The records of many different companies are merged

18   without the user's knowledge or consent to provide an intrusive profile of activity on the

19   computer. There are no practical limits on what can be collected or used.

20   31.    Application Developer's Affiliates offer "free" software kits (hereinafter referred

21   to as "SDKs"), that application developers download and insert into its application. A software

22   development kit ("SDK") is typically a set of development tools that allows for the creation of

23   applications for a certain software package, software framework, hardware platform, computer

24   system, video game console, operating system, or similar platform. It may be something as

25   simple as an application programming interface (API) in the form of some files to interface to a

26   particular programming language or include sophisticated hardware to communicate with a

27   certain embedded system. Often SDKs can be downloaded directly via the Internet. Many SDKs

28   are provided for free to encourage Application Developers to use the Application Developer

1    Affiliates system or language.

2        32.    SDKs though provided Application Developer Affiliates the access to Application

3    users when Application Developers downloaded the Application Developer Affiliates' SDKs

4    into its application; such provided the ability to obtain the Plaintiffs' and Class Members' UDID

5    and to conduct cross application tracking, activities made the basis of this action.

6        33.    The SDKs also involve tracking libraries whose sole purpose is to collect and

7    compile statistics on application uses and usage, and send the device ID as part of their

8    functionality. These libraries are used to display advertisements so as to provide revenue for the

9    application developer; and the mechanism for the libraries to also provide the mobile device's

10   UDID once the user installed applications.

11       34.    Application Developers Analytics reports are now available for mobile websites

12   by simply pasting server-side code snippets (available for PHP, JSP, ASP, NET, and PERL) on

13   each page they wish to track. Web Analytics vendors then create a profile for their mobile

14   website where they can view the same kind of information that's in standard Analytics reports

15   including visitor information and traffic sources, including tracking users visiting their mobile

16   websites form both high-end "smartphones" and WAP devices.

17       **C.    Android Market**

18       35.    The Android Market is an online software store developed by Google for Android

19   devices. An application program ("app") called "Market" is preinstalled on most Android devices

20   and allows users to browse and download apps published by third-party developers, hosted on

21   Android Market. Users can also search for and read detailed information about apps from the

22   Android Market website.

23       36.    Android devices can run applications written by third-party developers and

24   distributed through the Android Market or one of several other application stores. Once they

25   have signed up, developers can make their applications available immediately, without a lengthy

26   approval process. When an application is installed, the Android Market displays all required

27   permissions. The user can then decide whether to install the application based on those

28

1  permissions. The user may decide not to install an application whose permission requirements

2  seem excessive or unnecessary. Possible app permissions include functionality such as:

3
- Accessing the Internet
4
- Making phone calls
- Sending SMS messages
5
- Reading and writing to the installed memory card
- Accessing a user's address book data
6

7      37.    The Android's Software Developer Kit provides the Defendant the ability to

8  import the tracking code into Android apps in order to track Plaintiffs and Class Members

9  activity on their mobile devices. The Android Software Development Kit License Agreement,

10  Terms and Conditions provides assurances to Plaintiffs and Class Members of Google's

11  contractual obligation to protect the privacy and security of Android Users:

12
- "You agree that if you use the SDK to develop applications for general public
13  users, you will protect the privacy and legal rights of those users. If the users
provide you with user names, passwords, or other login information or
14  personal information, your must make the users aware that the information
will be available to your application, and you must provide legally adequate
15  privacy notice and protection for those users. If your application stores
personal or sensitive information provided by users, it must do so securely. If
16  the user provides your application with Google Account information, your
application may only use that information to access the user's Google Account
17  when, and for the limited purposes for which, the user has given you
permission to do so."

18      38.    The Android Operating System's "sandboxing mechanism", a technique to create

19  a configured execution environment, attempts to limit access to other application's data, by

20  preventing Third party applications from seeing each other or accessing specific locations;

21  however, when Defendant combines the UDIDs and mobile device data derived from the

22  sandboxing mechanism, such prevention serves no purpose.

23      39.    Ad Networks and Web Analytics Vendors are associated with a multitude of

24  Android applications and are thus able to cross-track user's mobile devices, accessing the ICCID

25  (SIM card serial number) and the IMSI (International Mobile Subscriber Identity), making it

26  possible to track users even when they change their device.

27      40.    While Google requires Android apps to notify users before they download the

28  app, of the data sources the app intends to access, Google does not require apps to ask

1 | permission to access some forms of the device ID, or to send it to outsiders. Possible sources
2 | include the phone's camera, memory, contact list, and the like. When Smartphone users let an
3 | app see their location, apps generally fail to disclose if they will pass the location to ad
4 | companies, thus avoiding the Android manifest file.

5 |      41.    Plaintiffs and Class Members are provided assurances by Google that the Android
6 | Operating System's root directing shall protect them from exploits

7 |      42.    The Android Operating System thus is used to obfuscate the privacy and security
8 | settings of the user's mobile device, such as the application developer's ability to write code to
9 | get the MAC address of the phone. Multiple applications from that same developer can also send
10 | the same UDID to servers the developer runs, and Google's Android operating system doesn't
11 | provide controls to adequately protect users' sensitive data.

12 |     **D.**    **Google Controls All Facet of Android's Operating System**

13 |         **1.**    **Android Operating System**

14 |      43.    The responsibility for the complete user experience begins with a consumer's
15 | purchase of a mobile device which includes an Android Operating System, designed and
16 | manufactured by Google that works the way Google wants it to work. All device manufactures
17 | that are involved with the Android Market, all run Google's proprietary Android operating
18 | system software.

19 |      44.    Since Defendant Google Inc. launched its mobile device business, it has
20 | maintained control of how mobile devices that have its Android Operating System work, how
21 | consumers use them, and what happens when consumers use them—including functions that
22 | Google controls, hidden from consumers' sight, although Google claimed Android would be
23 | transparent and inclusive.

24 |      45.    Google controls the process for the development software as well—such as by
25 | influencing developers to use Google's software development kit ("SDK"), and providing highly
26 | detailed guidelines for app development.

27

28

1    46.    Google uses the mobile devices with Android operating systems, the Android

2  Market, and the software development process to completely control the user experience by

3  constructing the user's entire mobile computing environment.

4    47.    Behind Google's wall of control, it designs the Android Operating System to be

5  readily accessible to ad networks and web analytic vendors' consumers and access their personal

6  information. These companies not only provide an important revenue source for app developers

7  who provide "free" apps through the Android Market, they also furnish the analytic data that

8  demonstrates Google's market leadership which it so often heralds in its quarterly investor

9  conference calls. These companies, by helping finance third-party apps, gain access to

10  consumers' mobile devices to collect personal information they use to track and profile

11  consumers, such as consumers' cellphone numbers, address books, unique device identifiers, and

12  geolocation histories— highly personal details about who they are, who they know, and where

13  they are.

14    48.    Since Google launched its mobile device business, it has sought to completely

15  control the user experience by controlling all facets of the mobile environment and has

16  differentiated itself in the marketplace by advertising that it provides its customers a tightly

17  integrated user experience. With this control comes responsibility.

18              **2.    Google Controls Distribution of Apps for Android Devices**

19    49.    The mobile device enables the user to download apps that utilize an Android

20  Operating System. Apps may only be obtained from Google's Android Market application and

21  website. Google owns, controls, and operates the Android Market, which it launched on October

22  22, 2008.

23    50.    Numerous apps available from the Android Market are created by third-party

24  developers. There are several hundred thousand third-party apps available at the Android Market.

25  Some of these are ostensibly free and some are sold for a fee. Google distributes approved free

26  apps through the Android Market without charging the developer a fee. Google also distributes

27  approved apps for which the consumer is charged a price set by the developer; Google collects

28

1  the payment price through its revenue collection mechanism and retains 30 percent of the
2  payment as its fee.

3      51.    Google claims it has no control of the Application Developers by not "vetting"
4  the Android software applications for the devices, but then controls the only marketplace for
5  Android apps—the Google Android Market. No third party app developer is also permitted to
6  sell an app in the Android Market without entering into Google's form AOS Developer
7  Agreement, but then Google fails to control the developers by failing to implement a system to
8  obligate the developers to abide by the terms of this agreement.

9      52.    Google represents to every user of the Android Market, pursuant to a click-
10 through agreement required to create a user Android Market account, that users' are provided
11 assurances that the Android market will not permit apps that violate their privacy: "Android
12 Market Terms of Service", online: http://www.google.com/mobile/android/market-tos.html

13     53.    Google has also sought to exercise "indirect" control over what apps may be
14 offered by the Android Market. No developer is permitted to sell an app in the Android Market
15 without entering into Google's form AOS Developer Agreement. Google trades on its control of
16 the Android Market, by implementing illusory contractual obligations in lieu of "vetting" the
17 applications claiming to offer only apps that agree to its AOS developer agreement; however
18 users rely on Google to allow only those and found safe and appropriate.

19     54.    Mobile Device users are only allowed to download software specifically licensed
20 by Google and available through the Android Market. If a user installs any software which
21 affects the "routing" of the Android Operating System, the users' warranty is voided.

22     55.    Even after a user downloads an app, Google maintains control by requiring that
23 the end-user license agreement for every third-party app include a clause giving Google the
24 ability to step into the shoes of the app developer control's the user's use of apps. Specifically,
25 the Android Developer distribution agreement, "Section 7.2, Google takedown Android Market
26 Terms of Service" (last accessed April 26, 2011), online:
27 http://www.google.com/mobile/android/market-tos.html

28

### 3. Google Controls The Development Process for Apps Available on Android Devices

56.     In addition to controlling the characteristics and distribution of apps, described above, Google exercises substantial control over its development and functionality.

57.     The third party must also agree to the terms of Google's Developer Program License Agreement ("AOS Developer Agreement"). An App developed using Google's SDK will only function on Android Devices and can only interact with the Android Device operating system and features in the ways permitted by the Android Developer Agreement and SDK.

58.     Google's control of the user experience includes restrictions, such as blocking consumers from modifying devices or installing non-Android Market Apps. As a direct consequence of the control exercised by Google, Plaintiffs and the Class cannot reasonably review the privacy effects of apps and must rely on Google to fulfill its duty to do so. Google represents that it undertakes such a duty, representing that all apps available in its Android Market have agreed to Google's mobile policies, and that it retains broad discretion to remove an App from the Android Market.

59.     A third party cannot upload an App for sale in the Android Market until Google, enters into a licensing agreement with the App developer thereby giving its approval for sale of the App through the Android Market. Google represents that an app may not access information from, or about, the user stored on the user's Android Device unless the information is necessary for the advertised functioning of the App. Google represents that it does not allow one app to access data stored by another App. Google represents that it does not allow an app to transmit data from a user's Android Device to other parties without the user's consent. Google though does not review app source code, i.e. it does not review the code written by the developer in a programming language to inspect in order to determine if apps acquire users' personal information without the users' knowledge. Thus, Google's policy of not reviewing app's executable files permits apps that subject consumers to privacy exploits and security vulnerabilities to be offered in the Android Market. Contrary to Google's representations to consumers, Google does not analyze the traffic generated by apps to detect apps that violate the privacy terms of the AOS Developer Agreement and Google's commitments to users.

60. Google provides additional assurances to user's that their privacy and security interests are provided since it possesses an app "kill switch", maintaining the ability to "enter" a user's mobile device to remove apps, thus according to the Android Market's terms of service:

> "Google may discover a product that violates the developer distribution agreement ... in such an instance; Google retains the right to remotely remove those applications from your device at its sole discretion."

61. Google recommends users should install only applications they trust and provides assurances to users that their privacy and security shall be protected since suspicious apps can be uninstalled at any time, but Google fails to address how users can make informed decisions about which apps are trustworthy and which are not; however knowing what an app is capable of is different than what knowing what it actually does. There's no way of knowing what liberties apps on competing platforms take with users' personal information, since Google failed to adequately inform user's that their mobile device's UDIDs would be provided to any party.

62. Google provides assurances when its terms of service and privacy policy that Plaintiffs and Class Members are not at risk for privacy and security violations when using Android Devices, but fails to provide notice that the origin of mobile tracking by third parties originates with the third party's access to the user's UDIDs, which is provided by Google.

63. Plaintiffs in this action consider the information from and about themselves on their Mobile Devices to be personal and private information.

64. Because Defendant imposed an undisclosed cost on consumers, by taking more information than they were entitled to take, Defendant's practices imposed economic costs on consumers.

65. The scarcity of consumer information increases its value. The Defendant devalued consumers' information by taking and propagating it.

66. The undisclosed privacy and information transfer consequences of Defendant's practices imposed costs on consumers in the form of the loss of the opportunity to have entered into value-for-value exchanges with other app providers whose business practices better conformed to consumers' expectations. Likewise, Defendant's lack of disclosure coupled with

1  their taking of information imposed costs on consumers who would otherwise have exercised

2  their rights to utilize the economic value of their information by declining to exchange it with

3  Defendant or any other app provider.

4       **E.**     **"Bandwidth Hogs"-Economic Harm**

5      67.    The Defendant's activities, made the basis of this action includes, but is not

6  limited to, economic harm due to the unauthorized use of Plaintiffs and Class Member's

7  Bandwidth.

8      68.    Bandwidth is the amount of data that can be transmitted across a channel in a set

9  amount of time. Any transmission of information on the internet includes bandwidth. Similar to

10  utility companies, such as power or water, the "pipeline" is a substantial capital expenditure, and

11  bandwidth usage controls the pricing model. Hosting providers charge user's for bandwidth

12  because their upstream provider charges them and so forth until it reaches the "back bone

13  providers". Retail providers purchase it from wholesalers to sell its consumers.

14      69.    Network provider's data plans charge consumers based upon items such items as

15  usage and "caps", i.e. $30.00 per month for an unlimited plan is standard, but limited plans have

16  caps, such as: 256 GB per month. Some national providers charge $1.00 per GB of bandwidth

17  exceeding a certain cap. Whether the data plan is marketed as "unlimited" or "limited", the costs

18  for the plans are allocated based upon the bandwidth usage, thus as the standard use of

19  bandwidth increases, so too does the plan costs increase. Since plans are based upon user's

20  average use, as consumer's usage increases collectively, costs increase for all users, while

21  individual bandwidth overages can be costly.

22      70.    Ads consume vast amounts of bandwidth, slowing a user's internet connection by

23  using their bandwidth, in addition to diminishing the mobile devices "Battery Life", in order to

24  retrieve advertisements. Web Analytics use up more bandwidth than ads, accessing bandwidth to

25  download and run ad script, thus Plaintiffs and Class members that did not access ads on an

26  application still had the Defendant's Application Developer and Defendant Application Affiliate

27  use their bandwidth.

28

1    71.    Advertisers are now using the internet as their primary ad-delivery pipe,

2  continually upcoming and downloading data from its networks causing substantial bandwidth

3  use. Ads that were hidden in content, or bundled used substantial bandwidth, as did Application

4  updates. Web analytics activities delayed movement on a site, users on a site, using their

5  bandwidth, to complete its activities.

6    72.    The Defendant's use of the Plaintiffs and Class Member's bandwidth for its data

7  mining activities is similar in nature to a practice called "hot linking"; wherein one(1) server

8  users another server and its bandwidth to send data. While it slows down the server, it also

9  allows bandwidth costs to be transferred to another server. Any redirect of a user's browsing

10  capabilities to access or download Defendant's and/or data mining activities produces similar

11  unauthorized bandwidth use. While only the tech Excluding the amount that the Plaintiffs and

12  Class members use by their own activities, the Defendant's unauthorized data mining activities

13  caused substantial bandwidth use to the Plaintiffs and Class Members resulting in actual out of

14  pocket expenditures, for Defendant's activities which include, but are not limited to the

15  following:

16          a)  Transmittal of and access to Plaintiffs and Class Members UDIDs;

17          b)  Loading of Ads first before content, bundling ads, and ads with excessive
                bandwidth;
18
            c)  Use of SDKs, and its functions within Plaintiffs and Class Member's mobile
19              device;

20          d)  "Harvesting" of Plaintiffs and Class Member's mobile device data;

21          e)  "Background" Activities including "data mining".

22    F.    **Defendant's Harmful Business Practices**

23    73.    Defendant's business practice unfairly wrests control Defendant used and

24  consumed the resources of the Plaintiffs' and Class Members' mobile devices by gathering user

25  information, adding such information to their mobile database, and transferring such to

26  Defendant. Defendant caused harm and damages to Plaintiffs' and Class Members' mobile

27  devices finite resources, depleted and exhausted its memory, thus causing an actual inability to

28

1  use it for its intended purposes, and significant unwanted CPU activity, usage, and network
2  traffic, resulting in instability issues.

3       74.    A millisecond was the time allotted for the Plaintiffs and Class Members
4  downloading a Defendant Google Android Market application, before Google Application
5  Developers and Google Application Developer Affiliates intentionally, and without user's
6  authorization and consent, had Defendant Google transmit, and/or allowed access to, data related
7  to whole or part, from the Plaintiffs' and Class Members' UDID. Such occurred without the
8  benefit of being advised of the association between Defendant Application Developer and its
9  Application Developer Affiliate, provided adequate time to access, read, and comprehend the
10  Terms of Service/Use and Privacy Policy for Defendant. While only the most technical savvy
11  mobile device users were familiar with UDIDs, a finite amount of individuals even knew about
12  "UDID," let alone could possibly comprehend the technical aspects inherent within the
13  Defendant's privacy documents.

14       75.    Traditional online advertising does not obtain a UDID of user's mobile devices.
15  The Defendant's objective was to obtain a mobile device's "Fingerprint," a practice of obtaining
16  mobile device information to perpetually identify the mobile device as identification, which can
17  then be linked to additional data elements to identify "personable identifiable information"
18  ("PII"), personal information and/ or sensitive information.

19       76.    The collection, use and disclosure of tracking data, such as obtaining a users'
20  UDID's by Defendant to provide its services, implicates Plaintiffs' and Class Members' privacy
21  and physical safety. Such Information is afforded special attention due to the consequences for
22  both privacy and physical safety that may flow from its disclosure. The heightened privacy and
23  physical safety concerns generated by the collection, use and disclosure of location information
24  are apparent in U.S. law that creates restrictive consent standards for its use and disclosure in the
25  private sector in the context of telecommunications services.

26
27
28

**Allegations as to Class Certification**

77.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3),

Plaintiffs bring this action as a Class action, on behalf of themselves and all others similarly

situated as members of the following Classes (collectively, the "Class"):

> All persons residing in the United States who possessed a mobile
> device, operated by the Android Operating System, and
> downloaded an application from October 22, 2008 to the date of
> the filing of this complaint.

78.     The Class action period, (the "Class Period"), pertains to the dates, October 22,

2008 to the date of Class certification.

79.     On behalf of the U.S. Resident Class, Plaintiffs seek equitable relief, damages and

injunctive relief pursuant to:

    a.     Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

    b.     Electronic Communications Privacy Act, 18 U.S.C. § 2510;

    c.     California's Computer Crime Law, Penal Code § 502;

    d.     California's Invasion of Privacy Act, Penal Code § 630;

    e.     Consumer Legal Remedies Act, ("CLRA") California Civil Code § 1750;

    f.     Unfair Competition, California Business and Professions Code § 17200;

    g.     Breach of Contract;

    h.     Breach of Implied Covenant of Good Faith and Fair Dealing;

    i.     Conversion;

    j.     Negligence;

    k.     Trespass to Personal Property / Chattels; and

    l.     Unjust Enrichment.

80.     **Persons Excluded From Classes:** Specifically excluded from the proposed Class

are Defendant, their officers, directors, agents, trustees, parents, children, corporations, trusts,

representatives, employees, principals, servants, partners, joint ventures, or entities controlled by

Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated

1 │ with Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this

2 │ action, and any member of the Judge's immediate family.

3 │     81.   **Numerosity:** The members of the Class are so numerous that their individual

4 │ joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the

5 │ proposed Class contains tens of thousands of members. The precise number of Class Members is

6 │ unknown to Plaintiffs. The true number of Class Members is known by Defendant.

7 │     82.   **Class Commonality:** Pursuant to Federal Rules of Civil Procedure, Rule 23(a)(2)

8 │ and Rule 23(b)(3), are satisfied because there are questions of law and fact common to Plaintiffs

9 │ and the Class, which common questions predominate over any individual questions affecting

10 │ only individual members, the common questions of law and factual questions include, but are not

11 │ limited to:

12 │       a.   What was the extent of Defendant's business practice of transmitting,
13 │           accessing, collecting, monitoring, and remotely storing users' Unique
          Device Identifiers ("UDIDs")?

14 │       b.   What information did Defendant collect from its business practices of
15 │           transmitting, accessing, collecting, monitoring, and remotely storing users'
          Unique Device Identifiers ("UDIDs"), and what did it do with that
16 │           information?

17 │       c.   Whether users, by virtue of their downloading the application, had pre-
          consented to the operation of Defendant's business practices of
18 │           transmitting, accessing, collecting, monitoring, and remotely storing users'
          Unique Device Identifiers ("UDIDs");

19 │       d.   Was there adequate notice, or *any* notice, of the operation of Defendant's
20 │           business practices of transmitting, accessing, collecting, monitoring, and
          remotely storing users' Unique Device Identifiers ("UDIDs") provided to
21 │           Plaintiffs and Class Members?

22 │       e.   Was there reasonable opportunity to decline the operation of Defendant's
          business practices of transmitting, accessing, collecting, monitoring, and
23 │           remotely storing users' Unique Device Identifiers ("UDIDs") provided to
          Plaintiffs and Class Members?

24 │       f.   Did Defendant's business practices of obtaining, collecting, monitoring,
          and remotely storing users' Unique Device Identifiers ("UDIDs") disclose,
25 │           intercept, and transmit personally identifying information, or sensitive
          identifying information, or personal information?
26 │

27 │       g.   Whether Defendant devised and deployed a scheme or artifice to defraud
          or conceal from Plaintiffs and the Class Members Defendant's ability to,
28 │           and practice of, intercepting, accessing, and manipulating, for its own
          benefit, personal information, and tracking data from Plaintiffs' and the

1    Class Members' personal mobile device via the ability to; track their mobile device by tracking its UDID on their mobile device;

2    h.   Whether Defendant engaged in deceptive acts and practices in, connection with its undisclosed and systemic practice of transmitting, accessing

3    and/or disclosing unique identifiers, tracking data, and personal information on Plaintiffs' and the Class Members' personal mobile device

4    and using that data to track and profile Plaintiffs' and the Class Members' Internet activities and personal habits, proclivities, tendencies, and

5    preferences for Defendant's use and benefit;

6    i.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, and remotely storing users' Unique

7    Device Identifiers ("UDIDs") violate the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030?

8

9    j.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

10   Identifiers ("UDIDs") violate the Electronic Communications Privacy Act, 18 U.S.C. § 2510?

11   k.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

12   Identifiers ("UDIDs") violate the Violations of California's Computer Crime Law, Penal Code § 502?

13

14   l.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

15   Identifiers ("UDIDs") violate the Violations of the California Invasion of Privacy Act, Penal Code § 630?

16   m.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

17   Identifiers ("UDIDs") violate the Violations of the Consumer Legal Remedies Act, ("CLRA") California Civil Code § 1750?

18

19   n.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

20   Identifiers ("UDIDs") violate the Violation of Unfair Competition, California Business and Professions Code § 17200?

21   o.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

22   Identifiers ("UDIDs") involve a Breach of Contract?

23   p.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

24   Identifiers ("UDIDs") involve a Breach of Implied Covenant of Good Faith and Fair Dealing?

25

26   q.   Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device

27   Identifiers ("UDIDs") involve a Conversion?

28

r.      Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device Identifiers ("UDIDs") involve a Negligence.

s.      Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device Identifiers ("UDIDs") involve a Trespass to Personal Property / Chattels?

t.      Did the implementation of Defendant's business practices of transmitting, accessing, collecting, monitoring, remotely storing users' Unique Device Identifiers ("UDIDs") result in Unjust Enrichment?

u.      Is the Defendant liable under a theory of aiding and abetting others for violations of the statutes listed herein?

v.      Is the Defendant liable under a theory of civil conspiracy for violations of the statutes listed herein?

w.      Is the Defendant liable under a theory of unjust enrichment for violations of the statutes listed herein?

x.      Whether Defendant participated in and/or committed or is responsible for violation of law(s) complained of herein?

y.      Are Class Members entitled to damages as a result of the implementation of Defendant's marketing scheme, and, if so, what is the measure of those damages?

z.      Whether Plaintiffs and members of the Class have sustained damages as a result of Defendant's conduct, and, if so, what is the appropriate measure of damages?

aa.     Whether Plaintiffs and members of the Class are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

bb.     Whether Plaintiffs and members of the Class are entitled to punitive damages, and, if so, in what amount?

83.     **Typicality:** Plaintiffs' claims are typical of the claims of all of the other members of the Class, because his claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by Defendant.

84.     **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer Class action litigation. Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

85.     **Superiority:** A Class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered

1   by individual Class Members is relatively small compared to the burden and expense that would

2   be entailed by individual litigation of their claims against the Defendant. It would thus be

3   virtually impossible for the Class, on an individual basis, to obtain effective redress for the

4   wrongs done to them.

5       86.   In the alternative, the Class may also be certified because:

6           a.   the prosecution of separate actions by individual Class Members would
                 create a risk of inconsistent or varying adjudication with respect to
7                individual Class Members that would establish incompatible standards of
                 conduct for the Defendant;
8

9           b.   the prosecution of separate actions by individual Class Members would
                 create a risk of adjudications with respect to them that would, as a
10               practical matter, be dispositive of the interests of other Class Members not
                 parties to the adjudications, or substantially impair or impede their ability
11               to protect their interests; and/or

        87.   Defendant has acted or refused to act on grounds generally applicable to the Class
12
    thereby making appropriate final declaratory and/or injunctive relief with respect to the members
13
    of the Class as a whole.
14
                              **First Cause of Action**
15                   **Violation of the Computer Fraud and Abuse Act**
                                **18 U.S.C. § 1030 *et seq.***
16

17      88.   Plaintiffs incorporate by reference all paragraphs previously alleged herein.

18      89.   Plaintiffs assert this claim against each and every Defendant named herein in this

19   complaint on behalf of themselves and the Class.

20      90.   The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, referred to as "CFAA,"

21   regulates fraud and relates activity in connection with computers, and makes it unlawful to

22   intentionally access a computer used for interstate commerce or communication, without

23   authorization or by exceeding authorized access to such a computer, thereby obtaining

24   information from such a protected computer, within the meaning of U.S.C. § 1030(a)(2)(C).

25      91.   Defendant violated 18 U.S.C. § 1030 by intentionally accessing Plaintiffs' and

26   Class Members' mobile computing device, without authorization by exceeding access, thereby

27   obtaining information from such a protected device, causing the transmission to users' Android

28

1   Devices, either by native installation or AOS upgrade, of code that caused users' Android

2   Devices to maintain, synchronize, and retain detailed, unencrypted location history files.

3        92.     At all relevant times, Defendant engaged in business practices of transmitting

4   code from within the Plaintiffs' and Class Members' downloaded Android Applications so as to

5   access their mobile devices to obtain a UDID and mobile device data. Such acts were conducted

6   without authorization and consent of the Plaintiffs and Class Members.

7        93.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), provides a civil cause

8   of action to "any person who suffers damage or loss by reason of a violation" of CFAA.

9        94.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i), makes it

10   unlawful to "knowingly cause[s] the transmission of a program, information, code, or command

11   and as a result of such conduct, intentionally cause[s] damage without authorization, to a

12   protected computer," of a loss to one or more persons during any one-year period aggregating at

13   least $5,000 in value.

14

15        95.     Plaintiffs' and Class Members' computers are a "protected computer...which is

16   used in interstate commerce and/or communication" within the meaning of 18 U.S.C. §

17   1030(e)(2)(B).

18        96.     Defendant violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing a

19   Plaintiffs' and Class Members' mobile computing device, without authorization or by exceeding

20   access, thereby obtaining information from such a protected mobile computing device.

21        97.     Defendant violated 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the

22

23   transmission of a command embedded within their webpage's, downloaded to Plaintiffs' and

24   Class Members' mobile computing device, which are protected mobile computing devices as

25   defined in 18 U.S.C. § 1030(e)(2)(B). By accessing, collecting, and transmitting Plaintiffs' and

26   Class Members' viewing habits, Defendant intentionally caused damage without authorization to

27

28

those Plaintiffs' and Class Members' mobile computing devices by impairing the integrity of the computer.

98.     Defendant violated 18 U.S.C. § 1030(a)(5)(A)(ii) by intentionally accessing Plaintiffs' and Class Members' protected mobile computing devices without authorization, and as a result of such conduct, recklessly caused damage to Plaintiffs' and Class Members' mobile computing devices by impairing the integrity of data and/or system and/or information.

99.     Defendant violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiffs' and Class Members' protected mobile computing devices without authorization, and as a result of such conduct, caused damage and loss to Plaintiffs and Class Members.

100.     Plaintiffs and Class Members have suffered damage by reason of these violations, as defined in 18 U.S.C. § 1030(e)(8), by the "impairment to the integrity or availability of data, a program, a system or information."

101.     Plaintiffs and Class Members have suffered loss by reason of these violations, as defined in 18 U.S.C. § 1030(e)(11), by the "reasonable cost ... including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

102.     Plaintiffs and Class Members have suffered loss by reason of these violations, including, without limitation, violation of the right of privacy, disclosure of personal identifying information, sensitive identifying information, and personal information, interception, and transactional information that otherwise is private, confidential, and not of public record.

103.     Defendant Google and the Defendant is jointly and severally liable for the violations of the Computer Fraud and Abuse Act alleged herein.

1    104.   As a result of these takings, Defendant's conduct has caused a loss to one or more

2    persons during any one-year period aggregating at least $5,000 in value in real economic

3    damages.

4    105.   Plaintiffs and Class Members have additionally suffered loss by reason of these

5    violations, including, without limitation, violation of the right of privacy.

6    106.   Defendant's unlawful access to Plaintiffs' and Class Members' computers and

7    electronic communications has caused Plaintiffs and Class Members irreparable injury. Unless

8    restrained and enjoined, Defendant will continue to commit such acts. Plaintiffs' and Class

9    Members' remedy at law is not adequate to compensate it for these inflicted and threatened

10   injuries, entitling Plaintiffs and Class Members to remedies including injunctive relief as

11   provided by 18 U.S.C. § 1030(g).

**Second Cause of Action**
**Violations of the Electronic Communications Privacy Act**
**18 U.S.C. § 2510**
**Against All Defendant**

15   107.   Plaintiffs incorporate by reference all paragraphs previously alleged herein.

16   108.   Plaintiffs assert this claim against each and every Defendant named herein in this

17   complaint on behalf of themselves and the Class.

18   109.   The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, referred

19   to as "ECPA," regulates wire and electronic communications interception and interception of

20   oral communications, and makes it unlawful for a person to "willfully intercept, endeavor to

21   intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or

22   electronic communication," within the meaning of 18 U.S.C. § 2511(1).

23   110.   Defendant violated 18 U.S.C. § 2511 by intentionally acquiring and/or

24   intercepting, by device or otherwise, Plaintiffs' and Class Members' electronic communications,

25   without knowledge, consent, or authorization.

26   111.   At all relevant times, Defendant engaged in business practices of intercepting the

27   Plaintiffs' and Class Members' electronic communications which included endeavoring to

28   intercept the transmission of a UDID from within their mobile device. Once the Defendant

1  obtained the UDID they used such to aggregate mobile device data of the Plaintiffs and Class

2  Members as they used their mobile device, browsed the Internet, and activated downloaded

3  Android applications.

4      112.   The contents of data transmissions from and to Plaintiffs' and Class Members'

5  personal computers constitute "electronic communications" within the meaning of 18 U.S.C.

6  §2510.

7      113.   Plaintiffs and Class Members are "person[s] whose … electronic communication

8  is intercepted … or intentionally used in violation of this chapter" within the meaning of 18

9  U.S.C. § 2520.

10     114.   Defendant violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting,

11  endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept

12  Plaintiffs' and Class Members' electronic communications.

13     115.   Defendant violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or

14  endeavoring to disclose, to any other person the contents of Plaintiffs' and Class Members'

15  electronic communications, knowing or having reason to know that the information was obtained

16  through the interception of Plaintiffs' and Class Member's electronic communications.

17     116.   Defendant violated 18 U.S.C. § 2511(1)(d) by intentionally using, or endeavoring

18  to use, the contents of Plaintiffs' and Class Members' electronic communications, knowing or

19  having reason to know the information was obtained through the interception of Plaintiffs'

20  and Class Members' electronic communications.

21     117.   Defendant's intentional interception of these electronic communications without

22  Plaintiffs' or Class Members' knowledge, consent, or authorization was undertaken without a

23  facially valid court order or certification.

24     118.   Defendant intentionally used such electronic communications, with knowledge, or

25  having reason to know, that the electronic communications were obtained through interception,

26  for an unlawful purpose.

27     119.   Defendant unlawfully accessed and used, and voluntarily disclosed, the contents

28  of the intercepted communications to enhance their profitability and revenue through advertising.

1 | This disclosure was not necessary for the operation of Defendant's system or to protect
2 | Defendant's rights or property.

3 |     120. The Electronic Communications Privacy Act of 1986, 18 USC §2520(a) provides
4 | a civil cause of action to "any person whose wire, oral, or electronic communication is
5 | intercepted, disclosed, or intentionally used" in violation of the ECPA.

6 |     121. Defendant is liable directly and/or vicariously for this cause of action. Plaintiffs
7 | therefore seek remedy as provided for by 18 U.S.C. §2520, including such preliminary and other
8 | equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of
9 | that section to be proven at trial, punitive damages to be proven at trial, and a reasonable
10 | attorney's fee and other litigation costs reasonably incurred.

11 |     122. Plaintiffs and Class Members have additionally suffered loss by reason of these
12 | violations, including, without limitation, violation of the right of privacy.

13 |     123. Plaintiffs and the Class, pursuant to 18 U.S.C. §2520, are entitled to preliminary,
14 | equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or
15 | $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees,
16 | and Defendant's profits obtained from the above-described violations. Unless restrained and
17 | enjoined, Defendant will continue to commit such acts. Plaintiffs' and Class Members' remedy
18 | at law is not adequate to compensate it for these inflicted and threatened injuries, entitling
19 | Plaintiffs and Class Members to remedies including injunctive relief as provided by 18 U.S.C. §
20 | 2510.

21 | **Third Cause of Action**
22 | **Violation of California's Computer Crime Law**
**Penal Code § 502 *et seq.***
23 | **Against All Defendant**

24 |     124. Plaintiffs incorporate the above allegations by reference as if set forth herein at
25 | length.

26 |     125. The California Computer Crime Law, California Penal Code § 502, referred to as
27 | "CCCL" regulates "tampering, interference, damage, and unauthorized access to lawfully created
28 | computer data and computer systems."

1  126. Defendant violated California Penal Code § 502 by knowingly accessing,

2 copying, using, made use of, interfering, and/or altering, data belonging to Plaintiffs and Class

3 Members: (1) in and from the State of California; (2) in the home states of the Plaintiffs; and (3)

4 in the state in which the servers that provided the communication link between Plaintiffs and the

5 applications they interacted with were located.

6  127. At all relevant times, Defendant's business practices of accessing the Plaintiffs'

7 and Class Members' mobile devices initially in order to obtain their UDID, then on a systematic

8 and continuous basis, Defendant accessed the Plaintiffs' and Class Members' mobile devices in

9 order to obtain mobile device data and to monitor and collect data related to their browsing

10 habits.

11  128. Pursuant to California Penal Code § 502(b)(1), "Access means to gain entry to,

12 instruct, or communicate with the logical, arithmetical, or memory function resources of a

13 computer, computer system, or computer network."

14  129. Pursuant to California Penal Code § 502(b)(6), "Data means a representation of

15 information, knowledge, facts, concepts, computer software, computer programs or instructions.

16 Data may be in any form, in storage media, or as stored in the memory of the computer or in

17 transit or presented on a display device."

18  130. Defendant has violated California Penal Code § 502(c)(1) by knowingly accessing

19 and without permission, altering, and making use of data from Plaintiffs' and Class Members'

20 mobile devices in order to devise and execute business practices to deceive Plaintiffs and Class

21 Members into surrendering private electronic communications and activities for Defendant's

22 financial gain, and to wrongfully obtain valuable private data from Plaintiffs.

23  131. Defendant has violated California Penal Code § 502(c)(2) by knowingly accessing

24 and without permission, taking, or making use of data from Plaintiffs' and Class Members'

25 mobile devices.

26  132. Defendant has violated California Penal Code § 502(c)(3) by knowingly and

27 without permission, using and causing to be used Plaintiffs' and Class Members' mobile

28 computing devices' services.

1    133.   Defendant violated California Penal Code section 502(c)(3) by knowingly and

2  without permission using and causing to be used Plaintiffs' and Class Members' computer

3  services.

4    134.   Defendant violated California Penal Code section 502(c)(4) by knowingly

5  accessing and, without permission, adding and/or altering the data from Plaintiffs' and Class

6  Members' computers, that is, application code installed on such computers.

7    135.   Defendant violated California Penal Code section 502(c)(5) by knowingly and

8  without permission disrupting or causing the disruption of Plaintiffs' and Class Members'

9  computer services or denying or causing the denial of computer services to Plaintiffs and the

10  Class.

11    136.   Defendant has violated California Penal Code § 502(c)(6) by knowingly and

12  without permission providing, or assisting in providing, a means of accessing Plaintiffs'

13  computers, computer system, and/or computer network.

14    137.   Defendant has violated California Penal Code § 502(c)(7) by knowingly and

15  without permission accessing, or causing to be accessed, Plaintiffs' computer, computer system,

16  and/or computer network.

17    138.   California Penal Code § 502(j) states: "For purposes of bringing a civil or a

18  criminal action under this section, a person who causes, by any means, the access of a computer,

19  computer system, or computer network in one jurisdiction from another jurisdiction is deemed to

20  have personally accessed the computer, computer system, or computer network in each

21  jurisdiction."

22    139.   Plaintiffs have also suffered irreparable injury from these unauthorized acts of

23  disclosure, to wit: their personal, private, and sensitive electronic data was obtained and used by

24  Defendant. Due to the continuing threat of such injury, Plaintiffs have no adequate remedy at

25  law, entitling Plaintiffs to injunctive relief.

26    140.   Plaintiffs and Class Members have additionally suffered loss by reason of these

27  violations, including, without limitation, violation of the right of privacy.

28

1    141.   As a direct and proximate result of Defendant's unlawful conduct within the

2    meaning of California Penal Code § 502, Defendant has caused loss to Plaintiffs in an amount to

3    be proven at trial. Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant

4    to California Penal Code § 502(e).

5    142.   Plaintiffs and the Class Members seek compensatory damages, in an amount to be

6    proven at trial, and injunctive or other equitable relief.

7
**Fourth Cause of Action**
**Violation of the California Invasion of Privacy Act**
8
**Penal Code § 630 *et seq.***
**Against All Defendant**
9

10   143.   Plaintiffs incorporate the above allegations by reference as if set forth herein at

11   length.

12   144.   Plaintiffs assert this claim against each and every California Defendant named

13   herein in this complaint on behalf of themselves and the Class.

14   145.   California Penal Code section 630 provides, in part:
"Any person who, . . . or who willfully and without the consent of
15   all parties to the communication, or in any unauthorized manner,
reads, or attempts to read, or to learn the contents or meaning of
16   any message, report, or communication while the same is in transit
or passing over any wire, line, or cable, or is being sent from, or
17   received at any place within this state; or who uses, or attempts to
use, in any manner, or for any purpose, or to communicate in any
18   way, any information so obtained, or who aids, agrees with,
employs, or conspires with any person or persons to unlawfully do,
19   or permit, or cause to be done any of the acts or things mentioned
above in this section, is punishable . . ."
20

21   146.   At all relevant times, Defendant's business practices of accessing the mobile

22   device data of the Plaintiffs and Class Members was without authorization and consent;

23   including but not limited to obtaining any and all communications involving their UDID.

24   147.   On information and belief, each Plaintiff, and each Class Member, during one or

25   more of their interactions on the Internet during the Class Period, communicated with one or

26   more web entities based in California, or with one or more entities whose servers were located in

27   California.

28

1    148.    Communications from the California web-based entities to Plaintiffs and Class

2  Members were sent from California. Communications to the California web-based entities from

3  Plaintiffs and Class Members were sent to California.

4    149.    Plaintiffs and Class Members did not consent to any of the Defendant's actions in

5  intercepting, reading, and/or learning the contents of their communications with such California-

6  based entities.

7    150.    Plaintiffs and Class Members did not consent to any of the Defendant's actions in

8  using the contents of their communications with such California-based entities.

9    151.    Defendant is not a " public utility engaged in the business of providing

10  communications services and facilities . . ."

11    152.    The actions alleged herein by the Defendant were not undertaken: "for the

12  purpose of construction, maintenance, conduct or operation of the services and facilities of the

13  public utility."

14    153.    The actions alleged herein by the Defendant were not undertaken in connection

15  with: "the use of any instrument, equipment, facility, or service furnished and used pursuant to

16  the tariffs of a public utility.

17    154.    The actions alleged herein by the Defendant were not undertaken with respect to

18  any telephonic communication system used for communication exclusively within a state,

19  county, city and county, or city correctional facility.

20    155.    The Defendant directly participated in the interception, reading, and/or learning

21  the contents of the communications between Plaintiffs, Class Members and California-based web

22  entities.

23    156.    Alternatively, and of equal violation of the California Invasion of Privacy Act, the

24  Defendant aided, agreed with, and/or conspired with Google to unlawfully do, or permit, or

25  cause to be done all of the acts complained of herein.

26    157.    Plaintiffs and Class Members have additionally suffered loss by reason of these

27  violations, including, without limitation, violation of the right of privacy.

28

1    158.    Unless restrained and enjoined, Defendant will continue to commit such acts.

2  Pursuant to Section 637.2 of the California Penal Code, Plaintiffs and the Class have been

3  injured by the violations of California Penal Code section 631. Wherefore, Plaintiffs, on behalf

4  of themselves and on behalf of a similarly situated Class of consumers, seek damages and

5  injunctive relief.

6                          **Fifth Cause of Action**
                  **Violation of the Consumer Legal Remedies Act**
7            **("CLRA") California Civil Code § 1750, *et seq.***
                      **Against Defendant Google**
8

9    159.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

10    160.    In violation of Civil Code section 1750, et seq. (the "CLRA"), Defendant has

11  engaged and is engaging in unfair and deceptive acts and practices in the course of transactions

12  with Plaintiffs, and such transactions are intended to and have resulted in the sales of services to

13  consumers. Plaintiffs and the Class Members are "consumers" as that term is used in the CLRA

14  because they sought or acquired Defendant's goods or services for personal, family, or

15  household purposes.

16    161.    At all relevant times, Defendant's business practices of selling Google

17  applications, or allowing Google application use for free, were goods Plaintiffs and Class

18  Members obtained for use. Defendant's scheme to offer such goods misleads the nature and

19  integrity of the Android application since Defendant intended to use such for mobile device

20  tracking.

21    162.    Defendant's representations that its services have characteristics, uses, and

22  benefits that they do not have, in violation of Civil Code § 1770(a)(5).

23    163.    In addition, Defendant's modus operandi constitutes a sharp practice in that

24  Defendant knew, or should have known, that consumers care about the status of personal

25  information and email privacy but were unlikely to be aware of the manner in which Defendant

26  failed to fulfill its commitments to respect consumers' privacy. Defendant is therefore in

27  violation of the "unfair" prong of the UCL.

28

1       164.   Defendant's acts and practices were fraudulent within the meaning of the UCL

2 because they are likely to mislead the members of the public to whom they were directed.

3       165.   Plaintiffs, on behalf of themselves and on behalf of each member of the Class,

4 shall seek individual restitution, injunctive relief, and other relief allowed under the UCL as the

5 Court deems just and proper.

6       166.   This cause of action is brought pursuant to the California Consumers Legal

7 Remedies Act, Cal. Civ. Code § 1750 *et seq*. (the "CLRA"). This cause of action does not seek

8 monetary damages at this point, but is limited solely to injunctive relief. Plaintiff and Class

9 Members will amend this Class Action Complaint to seek damages in accordance with the

10 CLRA after providing the Defendant with notice pursuant to California Civil Code § 1782.

11       167.   At this time, Plaintiffs and Class Members seek only injunctive relief under this

12 cause of action. Pursuant to California Civil Code, Section 1782, Plaintiffs will notify Defendant

13 in writing of the particular violations of Civil Code, Section 1770 and demand that Defendant

14 rectify the problems associated with its behavior detailed above, which acts and practices are in

15 violation of Civil Code § 1770.

16       168.   If Defendant fail to respond adequately to Plaintiffs' and Class Members' above-

17 described demand within 30 days of Plaintiffs' notice, pursuant to California Civil Code, Section

18 1782(b), Plaintiffs will amend the complaint to request damages and other relief, as permitted by

19 Civil Code, Section 1780.

20

21                         **Sixth Cause of Action**
**Violation of Unfair Competition California Business and Professions Code § 17200**
22                                 **Against All Defendant**

23       169.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

24       170.   In violation of California Business and Professions Code § 17200 et seq.,

25 Defendant's conduct in this regard is ongoing and includes, but is not limited to, unfair, unlawful

26 and fraudulent conduct.

27

28

1       171.    Defendant misled consumers by continuously and falsely representing during the

2  Class Period that they would not make personally identifiable information available to third

3  parties as alleged herein.

4       172.    At all relevant times, Defendant's business practices of merging Defendant

5  Google's mobile devices and Defendant Application Developer's applications and services to

6  Plaintiffs and Class Members by way of, *inter alia*, commercial marketing and advertising,

7  misrepresented and/or omitted the truth about the extent to which Defendant would obtain and

8  share Plaintiffs' and Class Members' sensitive and personal identifiable information with third

9  parties.

10      173.    Defendant engaged in these unfair and fraudulent practices to increase their

11  profits. Had Plaintiffs known that Defendant would share his personally identifiable information

12  with third parties; he would not have purchased or used the Defendant's services, which in turn,

13  forced him to relinquish, for free, valuable personal information.

14      174.    By engaging in the above-described acts and practices, Defendant has committed

15  one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiffs

16  and the Class have suffered injury-in-fact and have lost money and/or property—specifically,

17  personal information and/or registration fees.

18    **A.  Unlawful Business Act and Practices**

19      175.    Defendant's business acts and practices are unlawful, in part, because they violate

20  California Business and Professions Code § 17500, et seq., which prohibits false advertising, in

21  that they were untrue and misleading statements relating to Defendant's performance of services

22  and with the intent to induce consumers to enter into obligations relating to such services, and

23  regarding statements Defendant knew were false or by the exercise of reasonable care Defendant

24  should have known to be untrue and misleading.

25      176.    Defendant's business acts and practices are also unlawful in that they violate the

26  California Consumer Legal Remedies Act, California Civil Code, Sections 1647, et seq., 1750, et

27  seq., and 3344, California Penal Code, section 502, and Title 18, United States Code, Section

28  1030. Defendant is therefore in violation of the "unlawful" prong of the UCL.

**B.  Unfair Business Act and Practices**

177.    Defendant's business acts and practices are unfair because they cause harm and injury-in-fact to Plaintiffs and Class Members and for which Defendant has no justification other than to increase, beyond what Defendant would have otherwise realized, its profit in fees from advertisers and its information assets through the acquisition of consumers' personal information.

178.    Defendant's conduct lacks reasonable and legitimate justification in that Defendant has benefited from such conduct and practices while Plaintiffs and the Class Members have been misled as to the nature and integrity of Defendant's services and have, in fact, suffered material disadvantage regarding their interests in the privacy and confidentiality of their personal information. Defendant's conduct offends public policy in California tethered to the Consumer Legal Remedies Act, the state constitutional right of privacy, and California statutes recognizing the need for consumers to obtain material information that enables them to safeguard their own privacy interests, including California Civil Code, Section 1798.80.

179.    In addition, Defendant's modus operandi constitutes a sharp practice in that Defendant knew and should have known that consumers care about the status of personal information and privacy but are unlikely to be aware of and able to detect the means by which Defendant were conducting themselves in a manner adverse to their commitments and users' interests, through the undisclosed functions of Android Devices and apps and the related conduct of the Defendant. Defendant is therefore in violation of the unfairness prong of the Unfair Competition Law.

180.    Defendant's acts and practices were fraudulent within the meaning of the Unfair Competition Law because they were likely to mislead the members of the public to whom they were directed.

181.    Google's practice of capturing, storing, and transferring through synchronization to other computers highly detailed and personal records of users' location histories of long duration, and storing such information in unencrypted form, was in violation of the unfairness prong of the Unfair Competition Law.

**Seventh Cause of Action**
**Breach of Contract**
**Against All Defendant**

182.    Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

183.    Plaintiffs and Class Members entered into a contract with Defendant Google in order to use the Google Store apps. This contract had rights, obligations, and duties between Plaintiffs and Class Members and Defendant Google, including but not limited to, protecting the privacy of its users.

184.    Plaintiffs and Class Members activities involved in their use of the Google App Store included, but was not limited to, providing personal identifying information to Defendant Google; furthermore Defendant Google designed the Plaintiffs' and Class Members' mobile device data, including but not limited to, their mobile devices' UDID with third parties, including Google Application Developers and Defendant Application Developers Affiliates, on violation of its own contract with Plaintiffs and Class Members.

185.    Plaintiffs and Class Members did not have notice, nor consent to, Defendant Google sharing their mobile devices UDID with Google Application Developers or Defendant Application Developers' Affiliates.

186.    Plaintiffs and Class Members have performed their obligation pursuant to Defendant Google's contract.

187.    Defendant Google has materially breached its contractual obligations through its conduct.

188.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant Google's breach of its contract with Plaintiffs and Class Members.

**Eighth Claim For Relief**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**Against All Defendant**

189.    Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs in this complaint.

190. As set forth above, Plaintiffs and Class Members submit personal information to Google and such information is stored on Plaintiffs' and Class Members' Android Operating System, and Google promises in its Privacy Policy that it will not share this information with third-party advertisers or application developers without Plaintiffs' consent, and the consent of each Class Member, respectively, and promises in its Android Market click-through agreement to protect users' privacy.

191. A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including their agreement in the transactions for acquisitions of Android Operating System and apps that embodies the relationship between Google and its users.

192. Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

193. Plaintiffs and Class Members reasonably relied upon Google to act in good faith with regard to the contract and in the methods and manner in which it carries out the contract terms. Bad faith can violate the spirit of their agreements and may be overt or may consist of inaction. Google's inaction in failing to adequately notify Plaintiffs and Class Members of the release of their personal information to the Google Application Developers, and by Defendant Application Developers Affiliates, depriving Plaintiffs and Class Members of the means to discover their information was "leaked", thus evidencing bad faith and ill motive.

194. The contract is a form contract, the terms of which Plaintiffs are deemed to have accepted once Plaintiffs and the Class signed up with Google. The contract purports to give discretion to Google relating to Google's protection of users' privacy. Google is subject to an obligation to exercise that discretion in good faith. The covenant of good faith and fair dealing is breached when a party to a contract uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices. Google breached its implied covenant of good

1 faith and fair dealing by exercising bad faith in using its discretionary rights to deliberately,
2 routinely, and systematically make Plaintiffs' and Class Members' personal information
3 available to third parties.

4     195.    Plaintiffs and Class Members' have performed all, or substantially all, of the of
5 the obligations imposed on them under contract, whereas Google has acted in a manner as to
6 evade the spirit of the contract, in particular by deliberately, routinely, and systematically
7 without notifying Plaintiffs and Class Members of its disclosure of Plaintiffs' and Class
8 Members' personal information to Defendant Affiliates, and by Defendant Developers. Such
9 actions represent a fundamental wrong that is clearly beyond the reasonable expectation of the
10 parties. Google's causing the disclosure of such information to the Defendant Affiliates, and by
11 Defendant Developers is not in accordance with the reasonable expectations of the parties and
12 evidences a dishonest motive.

13     196.    Google's ill motive is further evidenced by its failure to obtain Plaintiffs' and
14 Class Members' consent in data mining efforts while at the same time consciously and
15 deliberately facilitating data mining to automatically and without notice provide user information
16 the Defendant Affiliates, and by Defendant Developers. Google profits from advertising
17 revenues derived from its data mining efforts from Plaintiffs and the Class.

18     197.    The obligation imposed by the implied covenant of good faith and fair dealing is
19 an obligation to refrain from opportunistic behavior. Google has breached the implied covenant
20 of good faith and fair dealing in their agreement through its policies and practices as alleged
21 herein. Plaintiffs and the Class have sustained damages and seek a determination that the policies
22 and procedures of Google are not consonant with Google's implied duties of good faith and fair
23 dealing.

24     198.    Google 's capture, retention, and transfer through synchronization of uses'
25 detailed location histories, even when such users had disable GPS services on their Android
26 Operating System, and storing such location histories in unencrypted form, was a breach of the
27 implied covenant of good faith and fair dealing.

28

1

2

### Ninth Cause of Action
### Conversion
### Against All Defendant

3      199.    Plaintiffs hereby incorporate by reference the allegations contained in all of the

4    preceding paragraphs of this complaint.

5      200.    Plaintiffs' and Class Members' mobile device data, including but not limited to

6    their mobile devices' UDID is being used by Defendant to obtain sensitive and personal

7    identifying information derived from Plaintiffs' and Class Members' mobile browsing activities.

8    Such property, owned by the Plaintiffs and Class Members, as valuable to the Plaintiffs and

9    Class Members.

10      201.    Plaintiffs' and Class Members' mobile devices use bandwidth. Defendant's

11    activities, made the basis of this action, used without notice or authorization, such bandwidth for

12    purposes not contemplated, not agreed to, by Plaintiffs and Class Members when they

13    downloaded Defendant Application Developer's applications. Such property, owned by the

14    Plaintiffs and Class Members, is valuable to the Plaintiffs and Class Members.

15      202.    Defendant unlawfully exercised dominion over said property and thereby

16    converted Plaintiffs' and Class Members' property, by providing sensitive and personal

17    identifying information to third parties and by using Plaintiffs' and Class Members' bandwidth

18    for data mining, in violation of the collective allegations, made the basis of this action.

19      203.    Plaintiffs and Class Members were damaged thereby.

20

21

### Tenth Cause of Action
### Negligence
### As To Defendant Google

22      204.    Plaintiffs incorporate the above allegations by reference as if fully set forth

23    herein.

24      205.    As set forth above, Google owed a duty to Plaintiffs and Class Members.

25      206.    Google breached its duty by designing Android Operating System so that the

26    Defendant Affiliates, and by Defendant Developers could acquire personal information without

27    consumers' knowledge or permission, by failing to review and remove privacy-violating apps

28    from the Android Market, and by constructing and controlling consumers' user experience and

1  mobile environment so that consumers could not reasonably avoid such privacy-affecting
2  actions.

3  207. Google failed to fulfill its own commitments and, further, failed to fulfill even the
4  minimum duty of care to protect Plaintiffs' and Class Members' personal information, privacy
5  rights, and security.

6  208. Google's failure to fulfill its commitments included Google's practice of
7  capturing frequent and detailed information about Android Operating System users' locations for
8  up to one year, including the locations of Android Operating System users who had utilized
9  Google's prescribed functioning for disabling Global Positioning System services, maintaining
10  records of such location histories on users' Android Operating System, transferring such location
11  history files to users' replacement Android Operating System, transferring such location history
12  files to other computers with which users synchronized their Android Operating System, and
13  storing such location history files in accessible, unencrypted form, without providing notice to
14  users or obtaining users' consent, and where consumers had no reasonable means to become
15  aware of such practice or to manage it, and where such practice placed users at unreasonable risk
16  of capture and misuse of such highly detailed and personal information, and where a reasonable
17  consumer would consider such a practice unexpected, objectionable, and shocking to the
18  conscience of a reasonable person.

19  209. Google's unencrypted storage on Android Operating System and computers with
20  which they were synchronized the information described above was negligent.

21  210. Plaintiffs and Class Members were harmed as a result of Google's breaches of its
22  duty, and Google proximately caused such harms.

23  **Eleventh Cause of Action**
**Trespass to Personal Property / Chattels**
24  **Against All Defendant**

25  211. Plaintiffs incorporate by reference all paragraphs previously alleged herein.

26  212. The common law prohibits the intentional intermeddling with personal property,
27  including a mobile device, in possession of another which results in the deprivation of the use of

28

1  the personal property or impairment of the condition, quality, or usefulness of the personal

2  property.

3       213.    By engaging in the acts alleged in this complaint without the authorization or

4  consent of Plaintiffs and Class Members, Defendant dispossessed Plaintiffs and Class Members

5  from use and/or access to their mobile devices, or parts of them. Further, these acts impaired the

6  use, value, and quality of Plaintiffs' and Class Members' mobile device. Defendant's acts

7  constituted an intentional interference with the use and enjoyment of their mobile devices. By the

8  acts described above, Defendant has repeatedly and persistently engaged in trespass to personal

9  property in violation of the common law.

10       214.    Without Plaintiffs' and Class Members' consent, or in excess of any consent

11  given, Defendant knowingly and intentionally accessed Plaintiffs' and Class Members' property,

12  thereby intermeddling with Plaintiffs' and Class Members' right to possession of the property

13  and causing injury to Plaintiffs and the members of the Class.

14       215.    Defendant engaged in deception and concealment in order to gain access to

15  Plaintiffs' and Class Members' mobile devices.

16       216.    Defendant undertook the following actions with respect to Plaintiffs' and Class

17  Members' mobile devices:

18          a)  Defendant accessed and obtained control over the users' mobile device;

19          b)  Defendant caused the installation of code on the hard drives of the mobile
               devices;

20

21          c)  Defendant programmed the operation of its code to circumvent the mobile
               device owners privacy and security controls, to remain beyond their control,
               and to continue function and operate without notice to them or consent from

22             Plaintiffs and Class Members;

23          d)  Defendant obtained users' UDID from a tracking code on the users' mobile
               device; and

24

25          e)  Defendant used the users' UDID to obtain without notice or consent, mobile
               browsing activities of the mobile device, and outside of the control of the
               owner of the mobile device.

26

27       217.    All these acts described above were acts in excess of any authority any user

28  granted when he or she visited the Defendant Google's Android Market and downloaded one (1)

1   or more of the Defendant applications and none of these acts was in furtherance of users viewing

2   the Defendant applications. By engaging in deception and misrepresentation, whatever authority

3   or permission Plaintiffs and Class Members may have granted to Defendant Google and/or

4   Google Application Developers was visited.

5       218.   Defendant's installation and operation of its program used, interfered, and/or

6   intermeddled with Plaintiffs' and Class Members' mobile devices. Such use, interference and/or

7   intermeddling was without Plaintiffs' and Class Members' consent or, in the alternative, in

8   excess of Plaintiffs' and Class Members' consent.

9       219.   Defendant's installation and operation of its program constitutes trespass,

10   nuisance, and an interference with Plaintiffs' and Class Members' chattels, to wit, their mobile

11   devices.

12       220.   Defendant's installation and operation of its program impaired the condition and

13   value of Plaintiffs' and Class Members' mobile devices.

14       221.   Defendant's trespass to chattels, nuisance, and interference caused real and

15   substantial damage to Plaintiffs and Class Members.

16       222.   As a direct and proximate result of Defendant's trespass to chattels, nuisance,

17   interference, unauthorized access of and intermeddling with Plaintiffs' and Class Members'

18   property, Defendant has injured and impaired in the condition and value of Class Members'

19   mobile devices, as follows:

20           a)  By consuming the resources of and/or degrading the performance of
               Plaintiffs' and Class Members' mobile devices (including space, memory,

21                processing cycles, Internet connectivity, and unauthorized use of their
               bandwidth);

22

23           b)  By diminishing the use of, value, speed, capacity, and/or capabilities of
               Plaintiffs' and Class Members' mobile devices;

24           c)  By devaluing, interfering with, and/or diminishing Plaintiffs' and Class
               Members' possessory interest in their mobile devices;

25

26           d)  By altering and controlling the functioning of Plaintiffs' and Class Members'
               mobile devices;

27           e)  By infringing on Plaintiffs' and Class Members' right to exclude others from
               their mobile devices;

28

    f) By infringing on Plaintiffs' and Class Members' right to determine, as owners of/or their mobile devices, which programs should be installed and operating on their mobile devices;

    g) By compromising the integrity, security, and ownership of Class Members' mobile devices; and

    h) By forcing Plaintiffs and Class Members to expend money, time, and resources in order to remove the program installed on their mobile devices without notice or consent.

### Twelfth Cause of Action
### Unjust Enrichment
### Against All Defendant

223. Plaintiffs hereby incorporate by reference the allegations contained in all of the paragraphs of this complaint.

224. By engaging in the conduct described in this Complaint, Defendant has knowingly obtained benefits from the Plaintiffs under circumstances that make it inequitable and unjust for Defendant to retain them.

225. Plaintiffs and the Class have conferred a benefit upon the Defendant which have, directly or indirectly, received and retained personal information of Plaintiffs and Class Members, as set forth herein. Defendant has received and retained information that is otherwise private, confidential, and not of public record, and/or have received revenue from the provision, use, and or trafficking in the sale of such information.

226. Defendant appreciate and/or have knowledge of said benefit.

227. Under principles of equity and good conscience, the Defendant should not be permitted to retain the information and/or revenue that they acquired by virtue of their unlawful conduct. All funds, revenue, and benefits received by them rightfully belong to Plaintiffs and the Class, which the Defendant has unjustly received as a result of their actions.

228. Plaintiffs and Class Members have no adequate remedy at law.

229. Defendant has received a benefit from Plaintiffs and Defendant has received and retain money from advertisers and other third-parties as a result of sharing the personal information of Defendant's users' with those advertisers without Plaintiffs' knowledge or consent as alleged in this Complaint.

1    230.    Plaintiffs and Class Members did not expect that Defendant would seek to gain

2  commercial advantage from third-parties by using his personal information without his consent.

3    231.    Defendant knowingly used Plaintiffs' and Class Members' personal information

4  without his knowledge or consent to gain commercial advantage from third-parties and had full

5  knowledge of the benefits they have received from Plaintiffs and Class Members. If Plaintiffs

6  and Class Members had known Defendant were not keeping his personal information from third-

7  parties, he would not have consented and Defendant would not have gained commercial

8  advantage from third-parties.

9    232.    Defendant will be unjustly enriched if Defendant is permitted to retain the money

10  paid to them by third-parties, or resulting from the commercial advantage they gained, in

11  exchange for Plaintiffs' and Class Members' personal information.

12    233.    Defendant should be required to provide restitution of all money obtained from

13  their unlawful conduct.

14    234.    Plaintiffs and the Members of the Class are entitled to an award of compensatory

15  and punitive damages in an amount to be determined at trial or to be imposition of a constructive

16  trust upon the wrongful revenues and/or profits obtained by and benefits conferred upon

17  Defendant as a result of the wrongful actions as alleged in this complaint.

18    235.    Plaintiffs and the Class have no remedy at law to prevent Defendant from

19  continuing the inequitable conduct alleged in this complaint and the continued unjust retention of

20  the money Defendant received from third-party advertisers.

21                              **PRAYER FOR RELIEF**

22          WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays

23  for judgment against Defendant as follows:

24          A.      Certify this case as a Class action on behalf of the Classes defined above, appoint

25  Plaintiffs as Class representatives, and appoint their counsel as Class counsel;

26          B.      Declare that the actions of Defendant, as set out above, violate the claims:

27          C.      Awarding injunctive and equitable relief including, *inter alia*: (i) prohibiting

28  Defendant from engaging in the acts alleged above; (ii) requiring Defendant to disgorge all of its

1    ill-gotten gains to Plaintiffs and the other Class Members, or to whomever the Court deems

2    appropriate; (iii) requiring Defendant to delete all data surreptitiously or otherwise collected

3    through the acts alleged above; (iv) requiring Defendant to provide Plaintiffs and the other Class

4    Members a means to easily and permanently decline any participation in any data collection

5    activities; (v) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully

6    acquired by Defendant by means of the wrongful conduct alleged herein; and (vi) ordering an

7    accounting and constructive trust imposed on the data, funds, or other assets obtained by

8    unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment

9    of such assets by Defendant;

10       D.      Award damages, including statutory damages where applicable, to Plaintiffs and

11   Class Members in an amount to be determined at trial;

12       E.      Award restitution against Defendant for all money to which Plaintiffs and the

13   Classes are entitled in equity;

14       F.      Restrain Defendant, their officers, agents, servants, employees, and attorneys, and

15   those in active concert or participation with them from continued access, collection, and

16   transmission of Plaintiffs' and Class Members' personal information via preliminary and

17   permanent injunction;

18       G.      Award Plaintiffs and the Classes:

19           a)      compensatory damages sustained by Plaintiffs and all others similarly
                     situated as a result of Defendant's unlawful acts and conduct;
20
21           b)      restitution, disgorgement and/or other equitable relief as the Court deems
                     proper;

22           c)      their reasonable litigation expenses and attorneys' fees;

23           d)      pre- and post-judgment interest, to the extent allowable;

24           e)      statutory damages, including punitive damages; and

25           f)      permanent injunction prohibiting Defendant from engaging in the conduct
                     and practices complained of herein.
26
27       H.      For such other and further relief as this Court may deem just and proper.

28

1 | Dated this 2nd day of May, 2011

2 |

3 | By: William M. Audet
Audet & Partners, LLP
4 | William M. Audet
WAudet@audetlaw.com
5 | 221 Main Street, Suite 1460
San Francisco, CA 94105
6 | Telephone: (415) 982-1776

7 | Lockridge Grindal Nauen P.L.L.P.
Robert K.Shelquist
8 | rkshelquist@locklaw.com
100 Washington Avenue South, Suite 2200
9 | Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
10 |

11 | Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
12 | malleylaw@gmail.com
1045 North Zang Blvd
13 | Dallas, TX 75208
Telephone: (214) 943-6100

14 | *Counsel for Plaintiffs and the Proposed Class*

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

Class Action Complaint
48

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated this 2nd day of May, 2011

_____

By: William M. Audet

Audet & Partners, LLP
William M. Audet
WAudet@audetlaw.com
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: (415) 982-1776

Lockridge Grindal Nauen P.L.L.P.
Robert Shelquist
rkshelquist@locklaw.com
Suite 2200
100 Washington Avenue South
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900

Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
malleylaw@gmail.com
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100